KEVIN L. WILKE,

                Plaintiff,                       OPINION AND ORDER

    v.

                                                    14-cv-639-wmc

ADAM STUBLASKI,

                Defendant.

*Pro se* plaintiff Kevin L. Wilke was granted leave to proceed in this lawsuit on his claim that Wisconsin Probation Agent Adam Stublaski violated his due process rights in unreasonably delaying a revocation hearing following his arrest in 2013. Now before the court is defendant Stublaski's motion for summary judgment. (Dkt. #29.) Since the undisputed evidence of record establishes both that Stublaski is immune from suit and acted reasonably under the circumstances, the court will grant his motion.

## UNDISPUTED FACTS[1]

### I. Officer Stublaski's Duties

During the relevant time period, defendant Adam Stublaski was a Probation and Parole Agent for the State of Wisconsin, assigned to Region 8, Unit 804 in Wood County, Wisconsin. Among his various responsibilities were enforcing Wisconsin Department of Corrections ("DOC") rules, Wisconsin statutes and conditions of probation and patrol; conducting investigations; and locating, detaining and transporting offenders who have

---

[1] Unless otherwise noted, the following facts are materials and undisputed. The court has drawn these facts from the parties' proposed findings and the cited evidence of record viewed in a light most favorable to plaintiff. *Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which parties version of the facts is more likely true.).

violated conditions of supervision. Furthermore, Stublaski was bound to follow the DOC's Electronic Case Reference Manual ("ECRM"), which requires that agents: (1) inform supervisors if a Final Revocation Hearing is not occurring in a prompt and timely manner; (2) be prepared to prove that the offender committed the alleged violation and that the violation is sufficiently serious to require revocation according to applicable standards; (3) be responsible for the presence of any witnesses who will give information related to the revocation; and (4) have copies of all relevant documents and be prepared to testify at the hearing. Stublaski was Wilke's agent from March 2008 until July 2014.

## II.     2013 Revocation Proceedings

As of December 2012, plaintiff Kevin Wilke was serving probation after pleading guilty/no contest to a charge of burglary. *See State v. Wilke*, Case No. 2002CF085 (Wood Cty.), *available at* https://wcca.wicourts.gov (last visited Feb. 22, 2019). In that case, Wilke actually received a sentence of two years of incarceration in state prison and one year of extended supervision, but those penalties were stayed in lieu of his successfully completing eleven years of probation.

Among other conditions, the terms of Wilke's probation generally required absolute sobriety and specifically prohibited his driving a car while under the influence. On December 1, 2012, Marquette County Sergeant Tom Goodwin pulled Wilke over on suspicion of driving under the influence of intoxicants. At the time of the stop, Wilke failed a sobriety test, but refused to take a breathalyzer. Therefore, Sergeant Goodwin transported Wilke to Divine Savior Hospital for a blood test, which confirmed his blood alcohol level was 0.107, well over the legal limit to drive a car.

Sergeant Goodwin drove Wilke to the Marquette County Jail, where he issued Wilke a citation for operating a motor vehicle while intoxicated and misdemeanor bail jumping. Goodwin next called the Division of Community Corrections to notify them of Wilke's arrest. While Agent Stublaski was not working on December 1, Probation and Parole Agent Julie Braunreither completed an order to detain him, based on the new criminal charges and violation of the conditions of his community supervision.

On December 6, 2012, Parole Agent Trista Whitehorse took Wilke's statement. Initially denying drinking *any* alcohol, Wilke then admitted that he had drank "a partial beer" some five hours before being pulled over by Sergeant Goodwin. On December 10, defendant Stublaski reviewed the Probation Office's custody hold and determined that a preliminary hearing was not required under Wis. Admin. Code § DOC 331.04(2), because Wilke had given a signed statement that he had drank alcohol in violation of his probation, and two days later, he submitted a revocation hearing request. Two days after that, on December 14, Stublaski's Probation Supervisor, Matthew Stake, determined that Wilke should remain in custody pending that hearing. More specifically, Stake agreed with Stublaski's recommendation to keep Wilke in custody because: he was believed to be dangerous; he was likely to engage in criminal behavior before the revocation took place; he was likely to engage in an activity that did not comply with the rules and conditions of his supervision; and the length of the sentence he would serve if revoked was great.

On January 4, 2013, the State of Wisconsin Division of Hearings and Appeals scheduled the revocation hearing for February 5, 2013. Defendant Stublaski had *no* control over the scheduled date; at most, Stublaski could provide a list of the dates he was not available, which in his case was December 24, 2012, through January 2, 2013, due to the

holidays.  Later, on January 14, 2013, Marquette County filed a criminal complaint against Wilke on charges of operating under the influence and bail jumping.  (Def. Ex. 1015 (dkt. #32-1).)

## III.   Stublaski's Revocation Summary

In advance of the scheduled hearing, defendant Stublaski completed a "Revocation Summary" on January 23, 2013, which ultimately recommended revocation.  (Def. Ex. 1005 (dkt. #31-6).)  In particular, Stublaski wrote that revocation was appropriate for the following reasons:

- Wilke admitted to drinking one partial beer, but otherwise denied that he had been drinking on December 1, 2012.  The fact that he had admitted to drinking a partial beer still meant that he violated his probationary terms because he was under an absolute sobriety order.

- The blood test results showed that Wilke was intoxicated.

- Wilke refused to accept responsibility for his actions, even after the blood test results proved that he had been driving while intoxicated.

- While Wilke made several positive adjustments while on probation (including completing an AODA treatment and co-owning a company), he had several negative adjustments as well.  Specifically, he had a long history of criminal behavior while he was incarcerated and while he was in the community.  He also had a long history of alcohol abuse, despite several failed attempts to complete AODA treatment.  Finally, he had a history of violent behavior, including several assaults.

- From December 10, 2012, through the date of Stublaski's report, Wilke had also incurred several jail violations that created disturbances and risks to jail safety.

(*Id.*)

Stublaski also performed a "Plotkin Analysis," which the administrative law judges presiding over revocation hearings apply to determine whether revocation is appropriate.

4

(*Id.* at 3.)[2]  The Plotkin analysis considers whether:  (1) confinement is necessary for the protection of the public, (2) the offender requires treatment in a correctional setting, and (3) not revoking probation would unduly depreciate the seriousness of the offense. Ultimately, it is the ALJ's responsibility to assign a "Necessary Response Intensity" -- low, medium or high -- for each of the three Plotkin factors.  In his Summary, Stublaski found that Wilke was a "high" for all three factors because:  his decision to drive under the influence put the community at risk; and even though Wilke had consumed alcohol and been charged with driving while intoxicated in 2010 -- after two times, the second of which he had been afforded the chance to complete treatment in the community -- he still continued to consume alcohol and operate his motor vehicle under the influence.

Finally, in his Summary, Stublaski discussed possible alternatives to revocation, finding none were appropriate.  In particular, he considered: (1) electronic monitoring, but rejected it because that option would not prevent continued alcohol use or driving while intoxicated; (2) sobriety monitoring, but rejected it because that option would not stop him from driving immediately after consuming alcohol; (3) a formal warning and amendment to his probationary rules, but rejected that option because it failed in the past; (4) additional jail time, but rejected that option because jail had not changed his criminal behavior in the past; (5) outpatient treatment, but rejected that option because Wilke had previously attempted and failed treatment in the community; and (6) inpatient treatment, but rejected that option because of the severity of Wilke's violations and pending criminal

---

[2] Specifically, in *State ex rel. Plotkin v. Dep't of Health and Soc. Servs.*, the Wisconsin Supreme Court adopted guidelines that the Department of Health and Social Services must use in determining whether revocation is warranted.  63 Wis. 2d 535, 545, 217 N.W.2d 641, 646 (1974).

charges.  For all of those reasons, Stublaski recommended that Wilke's stayed sentence from Case No. 2002CF085 be imposed.  Both of defendant Stublaski's supervisors, Stake and Ron Kalmus, approved his summary on January 25 and 29, 2013, respectively.

Plaintiff Wilke does not contest the content of Stublaski's Revocation Summary, but faults him for not considering another factor:  at the time of his arrest, Wilke claims he had $1,600.00 of cash and credit cards on him, which he maintains should have weighed in his favor because it shows his financial stability.  Unsurprisingly, Stublaski avers that he was not aware of that fact, but that he would have proceeded to recommend revocation regardless.[3]

## IV.    Revocation Hearing Scheduling

On January 16, 2013, Stublaski received a letter from Wilke's attorney expressing doubt about whether the February 5, 2013, hearing date would work.  Although Stublaski took no action to change the hearing date at that point, Sergeant Goodwin further notified Stublaski on February 1, 2013, that he would be unable to attend the February 5 hearing.  Concluding that the hearing date would need to change because Goodwin was his only witness, Stublaski then contacted the Wisconsin Division of Hearings and Appeals that same day (February 1) and asked for a new hearing date.  Because Wilke was being held far from Stublaski, and he felt the need to act quickly with the hearing date just four days away, Stublaski did not discuss the plan to change the date with Wilke himself.  Still,

---

[3] Stublaski further volunteers that the fact that Wilke had money would not have affected his detention status, since even if Wilke were to have been released on a cash bond from jail on the pending charges in Marquette County, he would have been turned over for custody in Wood County Jail pending the revocation hearing based on the probation office's detention order.

Wilke was given the chance to object to the hearing date change, which he did. However, the ALJ determined that Stublaski had good cause to ask for a new date, and rescheduled the hearing for March 25, 2013. That date was also determined by the Division of Hearings and Appeals, and not by Stublaski.

On or around March 4, Wilke posted a cash bond with Marquette County Jail in his pending criminal matter, Case No. 2013CT2, and was transferred to the Wood County Jail based on his detention order. On March 11, Stublaski received a letter from the Division of Hearings and Appeals, indicating that the hearing would again be moved from March 25 to March 26. Stublaski had nothing to do with this change. Instead, the change was apparently made by the Division to accommodate Wood County's practice of conducting hearings over video equipment.

## V.     Revocation Hearing and Stublaski's Appeal

As rescheduled, the revocation hearing took place on March 26, 2013. By then, Wilke's counsel had withdrawn, so Wilke represented himself. ALJ David R. Braithwaite presided over that hearing and ultimately declined to revoke his probation. While ALJ Braithwaite concluded that Wilke "violated his rules (of probation) on December 1, 2012, by consuming alcohol and operating a vehicle under the influence of alcoholic beverages," (Ex. 1010 (dkt. #31-11)), he determined that revocation was inappropriate since Wilke had already been in custody for almost four months, which seemed a sufficient sanction for his probation violations. Braithwaite further pointed to other mitigating factors: Wilke was highly motivated to avoid violations in the future; he showed himself a willing participant in treatment; he had ongoing gainful employment and business in the

community; he was willing to pay the rest of his restitution and court obligations; Wilke now knew that he would face serious consequences if he failed to follow the probationary conditions going forward; and there was a reasonable chance that he would not leave the community.

Stublaski learned about ALJ Braithwaite's ruling on March 28, 2013. Stublaski proceeded to file a timely appeal of that decision on April 10, 2013, because the Department of Community Corrections had a right to do so, and because ALJ Braithwaite had found that Wilke violated the terms of his probation. More specifically, based on his professional experience, Stublaski disagreed with ALJ Braithwaite's analysis that the mitigating factors outweighed Wilke's violations and conduct prior to the December 2012 arrest. On April 16, 2013, Division of Hearings and Appeals Administrator David Schwarz reviewed Stublaski's appeal and sustained ALJ Braithwaite's decision, noting that while he, too, viewed Wilke's violations as serious, he also agreed with Braithwaite that Wilke's time served in jail was a sufficient sanction and that Wilke should be given "one more opportunity to show that he can abstain from alcohol and [comply] with his rules of supervision." (Ex. 1012 (dkt. #31-3) at 1.)

Wilke was released the following day, on April 17, having spent 137 days in jail. Wilke alleges that as a result of his incarceration, he lost his residence and many business opportunities.

OPINION

Defendant Stublaski seeks judgment in his favor on grounds of absolute immunity and because, based on the evidence of record, the delays surrounding Wilke's revocation hearing and Stublaski's appeal were reasonable. For the reasons that follow, the court

agrees.

## I.      Absolute Immunity

"[W]hen officials engage in activities that are inexorably connected with the execution of parole revocation procedures and are analogous to judicial action they are also entitled to absolute immunity." *Smith v. Gomez*, 550 F.3d 613, 618-19 (7th Cir. 2008) (quotation omitted); *see also Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (probation officers entitled to absolute immunity for "acts associated with the decision to grant, revoke, or deny [probation], or the signing of an arrest warrant").

Wilke has been able to point to no evidence or legal authority even suggesting that Probation Agent Stublaski's challenged actions, which were all related to his revocation, scheduling of his revocation hearing or appealing the decision not to revoke him, were even arguably *not* inexorably connected to revocation procedures. While Wilke may *disagree* with the *merits* of Stublaski's actions related to those procedures, that has almost no bearing on determining whether Stublaski was *acting* in his prosecutorial-like role in pursuing revocation or handling the hearing and appeal. In fact, since the thrust of Wilke's complaints relate to Stublaski's decisions as to scheduling the hearing and appealing the result, Stublaski is unquestionably entitled to absolute immunity.

## II.      Merits

Even assuming that all of Stublaski's challenged actions were not inexorably related to revocation procedures, his request for extension of the hearing date and pursuit of an appeal would not permit a reasonable trier of fact to find his actions violated Wilke's due

process rights. Due process requires that a revocation hearing be held within a "reasonable time" of a probationer being taken into custody. *See Morrissey v. Brewster*, 408 U.S. 471, 488 (1972). Factors relevant in determining whether the time for a hearing is reasonable include the length of the delay, the reasons for the delay, whether and when petitioner asserted a right to a prompt hearing, and whether petitioner suffered prejudice. *See United States v. Rasmussen*, 881 F.2d 395, 398 (7th Cir. 1989); *Hanahan v. Luther*, 693 F.2d 629, 634 (7th Cir. 1982). The Supreme Court has stated that a two-month delay is not unreasonable, *Morrissey*, 408 U.S. at 488, but the Seventh Circuit has suggested that three months may be the outside limit of reasonableness. *See Hanahan v. Luther*, 693 F.2d 629, 634 (7th Cir. 1982); *United States ex rel. Sims v. Sielaff*, 563 F.2d 821, 825 (7th Cir. 1977). However, if Wilke's detention stemmed from another charge, and *not* the pending revocation proceeding, his due process rights are not triggered because he has not suffered a "loss of liberty." *Moody v. Daggett*, 429 U.S. 78, 87 (1976).

Wilks insists that Stublaski's delays were unreasonable since he repeatedly asked Stublaski to schedule an earlier hearing. However, it is undisputed that for a portion of this time, Wilke was in custody not only due to his revocation hold by Wood County, but also because new charges were pending against him arising out of the drunk driving incident that led to his original arrest on December 1, 2012, in Marquette County. Indeed, it is undisputed that Wilke did not post bail for those new charges until March 4, 2013. Given that Wilke's revocation hearing took place just 22 days after Wilke posted bail and was then held on the probation detainer alone. Under *Morrissey*, this short delay was not an unreasonable period of time as a matter of law. 408 U.S. at 488 (noting that a two-month delay did not appear unreasonable).

Even assuming the length of the delay could implicate Wilke's due process rights, Stublaski's reason for the delay was completely justifiable: he asked for the delay on February 1, having learned that day his sole witness, Goodwin, could not attend the February 5 hearing. Wilke has directed the court to no authority suggesting that such a request was unreasonable, nor is the court aware of any. Given that Stublaski acted promptly and had no control over the rescheduled hearing date, no reasonable trier of fact could find Stublaski acted unreasonably.

As to the appeal, it is undisputed that Stublaski had a good faith basis upon which to appeal ALJ Braithwaite's decision, since he had concluded that Wilke *had* violated the terms of his probation yet felt that revocation of his probation was inappropriate given the time he already spent in jail awaiting his hearing. At least arguably, this would seem a reason to revoke and sentence to time-served, rather than not to revoke. Regardless, Wilke does not dispute that it was within Stublaski's discretion as a probation officer to appeal that decision, nor that the appeal was frivolous. Accordingly, a reasonable jury could neither conclude on this record that the delays leading up to the revocation hearing, nor the subsequent delay pending appeal, were unreasonable.

## III. Qualified Immunity

Finally, even if a violation could be found here, defendant Stublaski asserts qualified immunity as a defense. Qualified immunity ordinarily protects government employees from liability for actions taken within the scope of their employment. Of course, qualified immunity would not apply if defendants' conduct violated "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982). *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). "In determining whether a constitutional right has been clearly established, it is unnecessary for the *particular* violation in question to have been previously held unlawful." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (emphasis added)). Instead, the question is whether the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

As to this question, however, the plaintiff has the burden of identifying a "closely analogous case that established a right to be free from the type" of restriction imposed. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (quoting *Findlay v. Lendermon,* 722 F.3d 895, 899 (7th Cir. 2013)). To that extent, clearly established law should not be defined "at a high level of generality," but rather should be "particularized" to the facts of the case. *White v. Pauly,* 137 S. Ct. 548, 552 (2017). On this record, Wilke cannot meet his burden under this standard.

Setting aside the fact that no evidence of record suggests that the delay was unreasonable, Wilke can point to *no* analogous case law that would have indicated to a reasonable probation officer in Stublaski's circumstances that he was violating Wilke's due process rights in pursuing revocation, and certainly not in seeking to reschedule his revocation hearing or exercising the right to appeal an adverse ruling. Accordingly, even if Stublaski's liability were a close call, Wilke would be precluded from obtaining monetary damages from him.

For all these reasons, judgment in Stublaski's favor is appropriate.

ORDER

IT IS ORDERED that:

1. Defendant Adam Stublaski's motion for summary judgment (dkt. #29) is GRANTED.

2. The clerk of court is directed to enter final judgment accordingly.

   Entered this 21st day of February, 2019.

   BY THE COURT:

   /s/
   _____
   WILLIAM M. CONLEY
    District Judge